**FILED**
**MARCH 19, 2013**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Marriage of: | ) | No. 30352-7-III |
| | ) | |
| RICHARD TODD WIXOM, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| LINDA BUCHHOLZ WIXOM, | ) | |
| | ) | |
| Respondent. | ) | |

KULIK, J. — After Richard Todd Wixom and Linda Buchholz Wixom could not agree on a summer schedule for their son, Ms. Wixom asked the court to set the schedule. The court did so in a temporary order and included in the schedule a planned trip to visit Ms. Wixom's parents. Mr. Wixom moved for an order declaring the temporary order void ab initio. He argued that the order was unconstitutional because it created visitation rights in nonparents without a proper basis. The court disagreed and awarded Ms. Wixom attorney fees. On appeal, Mr. Wixom assigns error to: (1) the conclusion that the temporary order presented no constitutional issues, (2) the award of attorney fees, and (3) various rulings in the temporary order. We conclude that the temporary order is moot

and affirm the trial court's order denying Mr. Wixom's motion for declaratory relief.

FACTS

In 2009, Richard Todd Wixom and Linda Buchholz Wixom agreed to a final parenting plan for their son Jordan.[1] The plan provided that

> the father may have residential time with the children up to five weeks in the summer upon giving two weeks['] notice to mother. The parents shall exchange a tentative summer schedule by May 15, with the understanding that this schedule is for planning purposes only, and it is anticipated that further adjustments shall be made to the schedule.

Clerk's Papers (CP) at 2.

Both parents filed petitions to modify the parenting plan in the spring of 2011 and trial was set for the fall of 2011. In the meantime, a dispute arose about Mr. Wixom's five weeks of summer residential time.

Until 2011, Mr. Wixom never exercised the option to have additional residential time in the summer. On June 21, 2011, Mr. Wixom told Ms. Wixom that he wanted to have five weeks with Jordan. He proposed July 23 to September 5, 2011. Ms. Wixom did not agree to the full five weeks because she had made other plans.

The major scheduling conflict was from August 8 to August 19. Ms. Wixom had arranged for Jordan to visit his grandparents in Portland during that time. According to

---

[1] The parenting plan also addresses the Wixoms' two older children, but there is no

2

Mr. Wixom, Ms. Wixom made those plans after he asked for the five weeks. According to Ms. Wixom, they agreed that Jordan would visit the grandparents while Mr. Wixom was away on business, but Mr. Wixom kept changing his schedule. Ms. Wixom had also already made plans for Jordan to meet with the guardian ad litem on July 30, go to a theme park on August 25, and go on a family camping trip during the last weekend of August.

The Wixoms eventually agreed that Jordan would visit Mr. Wixom from July 23 to July 29 and from August 1 to August 7 in addition to his regular visits.

Ms. Wixom planned to pick up Jordan at 5:00 p.m. on July 29, 2011. On the morning of July 29, she told Mr. Wixom that she would not be able pick up Jordan until 5:45 p.m. When she got to Mr. Wixom's house, she knocked on the door, but nobody answered. Ms. Wixom was not able to reach either Mr. Wixom or Jordan by telephone until July 31.

*Motion for Ex Parte Restraining Order*

On August 1, Ms. Wixom filed a motion for an ex parte restraining order to return Jordan, resolve the summer schedule dispute, and award attorney fees.

---

dispute about residential time with them.

The court granted the motion to resolve the summer schedule. It ordered that

> Jordan's summer schedule shall look like his previous summer schedules
> prior to litigation where Mr. Wixom did not exercise any extra summer time
> .... Summer 2011 is modified as follows and the summer schedule in the
> Final Parenting Plan from 2009 is suspended. Summer 2011—Jordan shall
> go to the Portland visit with his grandparents, go to Silverwood w/mom for
> his birthday, exercise last weekend in August w/mom for camping trip and
> shall remain w/mom this weekend (Aug. 5-7) as a makeup for last weekend.

CP at 53-54.

The court then addressed attorney fees. It found that "Mr. Wixom's behavior on July 29, 2011 was unreasonable." CP at 53. It explained that there were "different ways [the situation] could have been handled verses [sic] . . . this secretive sneaky way of taking [Jordan] with you and not calling and not telling [Ms. Wixom]." CP at 85.

*Motion for Declaratory Relief*

Mr. Wixom then filed a motion for a judgment declaring "the court's orders issued [A]ugust 5, 2011 to be void ab inito [sic] due to its State and Federal constitutional infirmities and violations." CP at 97. He argued that the order violated his constitutional liberty interest to parent his child because it awarded a nonparent visitation over him.

The court denied the motion on September 23. It explained that on August 5, "[the court] designated the rights between parents, and during mom's time [the court] allowed the child to go on a visit . . . . I think that was within the discretion of the Court. I don't

4

think it created rights in the grandparents so I don't think there was a constitutional violation." Report of Proceedings (RP) at 40-41. It also awarded Ms. Wixom $500 attorney fees pursuant to RCW 7.24.100. Mr. Wixom appeals.

ANALYSIS

*August 5 Order.* Mr. Wixom contends that the August 5 order contains four errors: (1) modifying the final parenting plan by giving residential time to nonparents, (2) giving Ms. Wixom additional residential time to make up for missing the weekend of July 29, (3) the finding that Mr. Wixom's behavior on July 29, 2011 was unreasonable, and (4) awarding attorney fees to Ms. Wixom.

A threshold issue is whether this court has jurisdiction to review the August 5 order. Ms. Wixom contends that it is not reviewable because it is not a final order and Mr. Wixom failed to seek discretionary review of it. Mr. Wixom responds that it is reviewable because it prejudicially affects the order denying his motion for declaratory relief.

RAP 2.2(a) provides a list of appealable orders. The August 5 order does not correspond to any of the orders listed. If an order is not appealable under RAP 2.2(a), this court may grant discretionary review. RAP 2.3(a). If a party seeks discretionary review of an order, it must designate that order in a notice for discretionary review. RAP 2.4(a).

5

Mr. Wixom did not designate the August 5 order for discretionary review.

However, this court will review orders or rulings not designated if it "prejudicially affects the decision designated in the notice." RAP 2.4(b)(1). An order or ruling prejudicially affects the decision designated if the designated decision would not have occurred but for the undesignated order. *Right-Price Recreation, LLC v. Connells Prairie Cmty. Council*, 146 Wn.2d 370, 380, 46 P.3d 789 (2002). The order designated for review here is the September 23 order denying Mr. Wixom's motion for declaratory relief. So, for this court to review any of the August 5 rulings, those rulings must be a basis for the September 23 order.

The September 23 order would not have occurred but for the ruling setting the summer schedule. It is therefore reviewable. The other rulings in the August 5 order—the finding that Mr. Wixom's behavior was unreasonable and that Ms. Wixom was entitled to makeup time and attorney fees—were not the basis for the designated order. Those rulings are not reviewable.

But even if this court reviewed those rulings, they do not warrant reversal. The evidence suggested that, on July 29, Mr. Wixom made no attempt to arrange Jordan's return or communicate with Ms. Wixom. This evidence supports the court's finding. *See Brandli v. Talley*, 98 Wn. App. 521, 523, 991 P.2d 94 (1999) (findings are reviewed for

6

substantial evidence). And the court acted well within its discretion when it allocated another weekend to Ms. Wixom to make up for the weekend of July 29. *See In re Marriage of Luckey*, 73 Wn. App. 201, 208, 868 P.2d 189 (1994) (issues of visitation are reviewed for abuse of discretion). Finally, Mr. Wixom presents no argument regarding the August 5 award of attorney fees, so we need not consider it. *See State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992); RAP 10.3(a)(6).

Because the propriety of the August 5 order setting the summer schedule and the order denying Mr. Wixom's motion for declaratory judgment present the same issues of law, those issues are addressed together below.

*Summer Schedule and Denial of Motion for Declaratory Relief.* Mr. Wixom challenges both the August 5 and September 23 orders. He contends that the August 5 order violates several constitutional rights, the court misconstrued it, and thus the court failed to recognize the order's constitutional violations. He also contends that the court should have granted declaratory relief because the issue was timely raised and justiciable, one appropriately addressed by a declaratory judgment. There is no dispute that the issue was timely raised. The remaining issues are questions of law, which we will review de novo. *See Columbia Park Golf Course, Inc. v. City of Kennewick*, 160 Wn. App. 66, 79, 248 P.3d 1067 (2011).

7

No. 30352-7-III
*In re Marriage of Wixom*

*Justiciability—Mootness*

Trial courts will not provide declaratory relief unless the claim is justiciable. *Coppernoll v. Reed*, 155 Wn.2d 290, 300, 119 P.3d 318 (2005). A claim is justiciable if there is:

> "(1) . . . *an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement*, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive."

*Id.* (emphasis added) (quoting *To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 411, 27 P.3d 1149 (2001)). The traditional limiting doctrine of mootness is inherent in these requirements. *To-Ro Trade Shows*, 144 Wn.2d at 411. This court will generally not review issues that are moot. *In re Marriage of Horner*, 151 Wn.2d 884, 891, 93 P.3d 124 (2004).

An issue is moot if "the court can no longer provide effective relief," *Brown v. Vail*, 169 Wn.2d 318, 337, 237 P.3d 263 (2010); it is rendered purely academic, *Grays Harbor Paper Co. v. Grays Harbor County*, 74 Wn.2d 70, 73, 442 P.2d 967 (1968); there is no longer a controversy between the parties, *State ex rel. Chapman v. Superior Court*, 15 Wn.2d 637, 639-42, 131 P.2d 958 (1942); or if a substantial question no longer exists. *Sorenson v. City of Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972).

8

Mr. Wixom contends that the August 5 order setting the summer schedule is not moot because the superior court has empowered Ms. Wixom to deprive Mr. Wixom of visitation in the future. Mr. Wixom perceives that the August 5 order encourages Ms. Wixom to deprive him of visitation, but the order merely states,

> Jordan's summer schedule shall look like his previous summer schedules prior to litigation where Mr. Wixom did not exercise any extra summer time .... Summer 2011 is modified as follows and the summer schedule in the Final Parenting Plan from 2009 is suspended. Summer 2011—Jordan shall go to the Portland visit with his grandparents, go to Silverwood w/mom for his birthday, exercise last weekend in August w/mom for camping trip and shall remain w/mom this weekend (Aug. 5-7) as a makeup for last weekend.

CP at 53-54. This order created a schedule for the summer of 2011 because the parties were unable to agree on one without court intervention. Because the summer of 2011 has long passed, the issue the August 5 order addresses is moot now and was moot on September 23, 2011, when the trial court denied Mr. Wixom's motion for a declaratory judgment. Because the issue was moot, the trial court correctly refused to declare the August 5 order void ab initio.

Given our conclusion that the August 5 issues are moot, we need only address attorney fees.

9

*Attorney Fees—Trial Court.* An award of statutory attorney fees will not be disturbed absent a clear abuse of discretion. *Fluke Capital & Mgmt. Servs. v. Richmond*, 106 Wn.2d 614, 625, 724 P.2d 356 (1986) (quoting *Mktg. Unlimited, Inc. v. Jefferson Chem. Co.*, 90 Wn.2d 410, 412, 583 P.2d 630 (1978), *overruled by Scott Fetzer Co. v. Weeks*, 114 Wn.2d 109, 786 P.2d 265 (1990)). When an erroneous view of the law is the basis for a decision, the decision is an abuse of discretion. *Dix v. ICT Group, Inc.*, 160 Wn.2d 826, 833, 161 P.3d 1016 (2007).

"[T]he court may make such award of costs as may seem equitable and just" in a proceeding for a declaratory judgment. RCW 7.24.100. "Costs" allows a party to recover the expense incurred by prosecuting or defending against a suit for declaratory judgment. *Seattle Sch. Dist. No. 1 v. State*, 90 Wn.2d 476, 541, 585 P.2d 71 (1978) (quoting *Rocky Mountain Fire & Cas. Co. v. Rose*, 62 Wn.2d 896, 899-900, 385 P.2d 45 (1963)). It does not include "attorneys' fees," except when some other statute is the basis for those fees. *Id.*

The trial court incorrectly awarded $500 in attorney fees to Ms. Wixom pursuant to RCW 7.24.100. To support that award, the court would have to rely on some other statute in addition to RCW 7.24.100. Here, the court relied only on RCW 7.24.100. Ms. Wixom concedes that this was incorrect and asks that this court reduce the award to "reflect just

statutory attorney fees." Br. of Resp't at 15. However, she does not point to any statute as a basis for those fees.

We reverse the award of attorney fees.

*Attorney Fees on Appeal.* Both parties ask for attorney fees on appeal under RCW 26.09.140 and due to each other's intransigence. A party may request attorney fees on appeal if applicable law grants the right to recover attorney fees. RAP 18.1(a). An award of attorney fees is discretionary. *See In re Marriage of Buchanan*, 150 Wn. App. 730, 740, 207 P.3d 478 (2009).

RCW 26.09.140 provides that the court may order a party to pay the other's attorney fees on appeal "after considering the financial resources of both parties." This court may award RCW 26.09.140 attorney fees only if the party requesting attorney fees files an affidavit showing his or her financial resources. RAP 18.1(c). Neither party has filed such an affidavit.

If intransigence is established, the parties' financial resources need not be considered. *In re Marriage of Mattson*, 95 Wn. App. 592, 606, 976 P.2d 157 (1999). A party's intransigence in this court or the trial court may support an award of attorney fees on appeal. *Id.* Both of the parties say that the other is intransigent, but neither cite to anything in the record that demonstrates intransigence.

No. 30352-7-III
*In re Marriage of Wixom*

We affirm the denial of declaratory judgment, reverse the September 23 award of attorney fees, and decline to award attorney fees on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Kulik, J.

WE CONCUR:

Brown, J.

Siddoway, A.C.J.

12